**Ronni ALEXANDER et al.**

v.

**YALE UNIVERSITY.**

Civ. No. N–77–277.

United States District Court,
D. Connecticut.

Dec. 21, 1977.

**2**

Anne Simon, New Haven, Conn., Margaret Kohn, Washington, D.C., Susan Meredith, New Haven, Conn., for plaintiffs.

William Doyle, Wiggin & Dana, New Haven, Conn., for defendant.

NEWMAN, District Judge.

The Ruling of the Magistrate is hereby adopted as the decision of the Court. Because of the significance of the issue concerning Title IX of the Education Amendments of 1972, the Ruling is set forth in full as Appendix A.

## APPENDIX A

ARTHUR H. LATIMER, Magistrate.

### RULING ON MOTION TO DISMISS

The appropriateness of immediate federal judicial relief is at issue in the instant civil action seeking redress for purported sex discrimination at Yale University. Plaintiffs are a male faculty member and several women students or former students who fundamentally contend that the defendant university's purported

> "failure to combat sexual harassment of female students and its refusal to institute mechanisms and procedures to address complaints and make investigations of such harassment interferes with the educational process and denies equal opportunity in education."

In requesting corrective measures "to be designed and implemented under the supervision of this Court", plaintiffs assert a right to relief individually and on behalf of a proposed class under Title IX of the Education Amendments of 1972, which provides in pertinent part in 20 U.S.C. § 1681(a) that

> "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

In express terms, Tile IX calls for administrative enforcement of that prohibition against sex discrimination, with funding cut-off a potential sanction when "compliance cannot be secured by voluntary means", 20 U.S.C. § 1682, but plaintiffs have not attempted resort to the responsible enforcing agency, the Department of Health, Education and Welfare. The statute contains no explicit grant of private suit rights other than through ultimate judicial review of H.E.W.'s actions, see 20 U.S.C. § 1683, and in moving to dismiss defendant chiefly argues that no right to sue can be properly "implied".

It is of course settled that no express statutory reference to a right of action is required to enable federal courts "to provide such remedies as are necessary to make effective the congressional purpose", *J. I. Case Co. v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964), and judicial remedies accordingly have been thought appropriately "implied" when "congressional purposes are likely to be undermined absent private enforcement" by those "intended to be protected by the statute", *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 25, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977). The general inquiry prompted by defendant's pending motion then is "whether the creation by judicial interpretation of the implied cause of action asserted . . . is necessary to effectuate Congress' goals", *id.* at 26, 97 S.Ct. at 941.

That "need" inquiry here involves distinct aspects. A logical prerequisite is that there be a sufficiently defined wrong under the statute invoked, and claims for relief adequately presented by the parties plaintiff. In this regard, it should be stressed at the outset that while the complaint deserves generous reading, see *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the question is not so much the customary one on motion to dismiss—whether plaintiffs could conceivably prove facts calling into play an established right

of action—as instead whether any circumstance depicted genuinely impels judicial creation of a new suit right, cf. *Turpin v. Mailet*, Civil No. N–75–181 (D.Conn. May 13, 1977). Such an approach is surely also consistent with Title IX's aims, for the statute is clearly addressed to specific practices of exclusion, inequitable resource allocation and similar concrete abuses. So viewed, most claims advanced in this action are tenuous indeed.

■ The complaint is founded on alleged instances of sexual harassment of women students by male faculty members or administrators, and the principal claim for relief is for an order "requiring defendant to institute and continue a mechanism for receiving, investigating and adjudicating complaints of sexual harassment", with plaintiffs asserting in conclusory fashion that their reported experiences are somehow

> "the result of a pattern, practice, and policy of defendant, its officers, agents, and employees, of neglecting and refusing to consider seriously complaints of sexual harassment of women students, with the effect of actively condoning continued sexual harassment of female students by male faculty members and administrators."

Before considering the university's possible responsibility, however, it must be observed that in any event a number of the proposed plaintiffs simply advance no persuasive claim that they have been deprived of cognizable Title IX rights. Plaintiff John Winkler, a member of the classics department, believes his teaching effort to have been hampered by an "atmosphere of distrust [of] male professors"; plaintiff Lisa Stone, a current student, speaks of "great emotional distress" on learning that another woman student was "the subject of sexual pressures and attentions from" a male university employee; plaintiff Ann Olivarius, a recent Yale graduate, relates that she had occasion as an officer of the Undergraduate Women's Caucus when at Yale to discuss with other students their complaints of sexual harassment, and allegedly met rebuff or indifference in attempting to press such complaints herself. None of these claims is of personal exclusion from a federally funded education program or activity, or of the personal denial of full participation in the benefits of such a program or activity in any measurable sense. No judicial enforcement of Title IX could properly extend to such imponderables as atmosphere or vicariously experienced wrong, and the claims just mentioned are untenable on their face.

Since any underlying claim that she was herself denied Title IX rights in unsuccessfully pursuing others' complaints does not merit recognition, there is no need to examine the propriety otherwise of the lone request for damages, plaintiff Olivarius' incidental prayer for $500 as compensation for asserted expenditure of "time, effort and money in investigating complaints herself, preparing them to be presented to responsible officials . . . and attempting to negotiate the complexities of *ad hoc* 'channels' ". Moreover, her graduation seems to have rendered moot her claim for equitable relief, which would appear to be the case as well for plaintiff Ronni Alexander—a graduate in 1977 before suit was commenced—absent sheer conjecture that the latter may in the future wish to resume study in a field allegedly abandoned at Yale because of "sexual demands" by her tutor, cf. *DeFunis v. Odegaard*, 416 U.S. 312, n. 5 at 320, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

Currently at Yale are two other women students who—like plaintiff Alexander—complain of a direct, personal experience of sexual harassment. Plaintiff Margery Reifler speaks in general terms of humiliation, distraction from studies and denial of recognition resulting from alleged harassment by a coach when she was manager of an athletic team; she "wanted to complain to responsible authorities" but did not. Plaintiff Pamela Price asserts that she received a poor grade in a course in her major field of study, not due to any "fair evaluation of her academic work", but as the consequence of her rejecting a professor's outright proposition "to give her a grade of 'A' in the

**4**

course in exchange for her compliance with his sexual demands". Price represents that she did complain promptly after that alleged incident only to be "told by responsible officials of defendant that nothing could be done to remedy her situation"; plaintiff further alleges that long after the ensuing course mark was given, she was asked to re-submit her complaint, but then "no investigation of the incident" was made and Yale officials have indicated that "nothing further will or can be done about her complaint". Plaintiff Price is a senior, in the process of applying to law schools, and expresses immediate concern that a clearly improper low grade "could materially damage . . . likelihood of admission".

■ A critical difference between these two claims is that plaintiff Reifler concededly made no complaint on which Yale could act, while plaintiff Price did complain to the university and supposedly met rebuff. The former's artfully drafted but conclusory assertion that general university inertia should be equated with policy and has "the effect of actively condoning . . . sexual harassment" is simply not adequate to show that Yale acted to deny her any right, cf. *Rizzo v. Goode,* 423 U.S. 362, 376–377, 96 S.Ct. 598, 606–607, 46 L.Ed.2d 561 (1976); *Turpin, supra,* and the concept of mere *respondeat superior* appears ill-adapted to the question of Title IX sex discrimination based on harassment incidents. This is not to say either that sexual harassment is never of concern under Title IX, or that a university may properly ignore the matter entirely. In plaintiff Price's case, for example, it is perfectly reasonable to maintain that academic advancement conditioned upon submission to sexual demands constitutes sex discrimination in education, just as questions of job retention or promotion tied to sexual demands from supervisors have become increasingly recognized as potential violations of Title VII's ban against sex discrimination in employment, see, e. g., *Barnes v. Costle,* 183 U.S.App.D.C. 90, 561 F.2d 983, 988–992 (1977). When a complaint of such an incident is made, university inaction then does assume significance, for on refusing to investigate, the institu-

tion may sensibly be held responsible for condoning or ratifying the employee's invidiously discriminatory conduct, cf. *id.* at 1000–1001 (MacKinnon, J., concurring).

But may any such private suit be entertained? The only reported appellate decision is contrary to plaintiffs' position, the Court of Appeals for the Seventh Circuit having held in the context of sex discrimination alleged by a disappointed medical school applicant that

"it would be an unwarranted exercise of federal judicial power to imply a private right of action in the face of a sophisticated scheme of administrative enforcement and judicial review that, if given an opportunity to work, may well prove itself adequate to the task for which Congress designed it."

*Cannon v. University of Chicago,* 559 F.2d 1063, 1082 (7 Cir. 1977) (on rehearing). On careful study of the factors pertinent to any such conclusion, however, this Court is unable to agree that the private claim may be summarily dismissed without further inquiry into actual need.

As pointed out initially, the overall question is whether the federal court should recognize or fashion a new suit right because "necessary to effectuate Congress' goals", *Piper v. Chris-Craft Industries, Inc., supra,* 430 U.S. at 26, 97 S.Ct. 926. The commonly accepted approach to the question of implying a judicial remedy, seemingly still valid, *id.* at 37, 97 S.Ct. 926, has been to examine four specific factors identified as relevant in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975):

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39 [36 S.Ct. 482, 60 L.Ed. 874] (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, e. g., *National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,* 414

U.S. 453, 458, 460 [94 S.Ct. 690, 38 L.Ed.2d 646] (1974) (Amtrak). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? See, e. g., *Amtrak, supra; Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 423 [95 S.Ct. 1733, 44 L.Ed.2d 263] (1975); *Calhoon v. Harvey,* 379 U.S. 134 [85 S.Ct. 292, 13 L.Ed.2d 190] (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler,* 373 U.S. 647, 652 [83 S.Ct. 1441, 10 L.Ed.2d 605] (1963); cf. *J. I. Case Co. v. Borak,* 377 U.S. 426, 434 [84 S.Ct. 1555, 12 L.Ed.2d 423] (1964); *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 394–395, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *id.,* at 400, 91 S.Ct. 1999 (Harlan, J., concurring in judgment)."

█ It is clear that plaintiff Price is within the class Title IX was designed to protect and that the claim is in no realistic sense more appropriate for state court action. Title IX's legislative history does not unequivocally show an express congressional intent to permit or preclude a private right of action, and although the history of subsequent passage of the Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, as amended, may perhaps be read to indicate that the latter statute's mention of Title IX was but prudent inclusion in the event courts did thereafter imply a private remedy, plaintiff's resort to this Court is certainly not ruled out, see *Cort v. Ash, supra* at 82, 95 S.Ct. 2080. Indeed, H.E.W. has further urged here and in *Cannon* that private suit enforcement would promote Title IX's purpose. The *Cannon* panel concluded that leave to sue "would be inconsistent with the legislative intent and underlying purposes of the statutory scheme", *Cannon, supra* at 1080, that court discerning "implicit" intent in the stress on the administrative process and expressing concern lest "private parties . . . circumvent the remedial scheme created by Congress", *id.* at 1081, with the

"remedies available" not shown "wholly inadequate", *id.* at 1082.

One difficulty with following *Cannon* is that the decision may yield substantially different enforcement rights to victims of sex discrimination than to those subjected to discrimination in federally assisted programs "on the ground of race, color, or national origin" in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.,* although Title IX was obviously patterned after Title VI, including its enforcement provisions, see §§ 2000d–1, 2000d–2. It seems plain enough that Title VI violations are actionable, see, e. g., *Lau v. Nichols,* 414 U.S. 563, 566, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974), and it is hard to understand why all Title IX claims should be less favorably regarded. It naturally has been suggested that such Title VI cases have been against "public" defendants and therefore strictly rest on the Civil Rights Act's grant of the right to sue for a deprivation under color of state law "of any rights . . . secured by the Constitution and laws", 42 U.S.C. § 1983, see *Cannon, supra* at 1083. If so, it could hardly be a principled distinction that one student would be at Yale and another at the University of Connecticut; if the state college student can secure judicial relief under § 1983, the more reason to imply a suit right for the identically situated private university student, cf. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

More importantly, perhaps, the issue of need for the remedy merits additional probing. While the Supreme Court has remarked that "express statutory provision for one form of proceeding ordinarily implies that no other means of enforcement was intended by the Legislature", *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 419, 95 S.Ct. 1733, 1738 44 L.Ed.2d 263 (1975) ("*SIPC*"), see also *National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) ("*Amtrak*"), the observation has been made

**6**

in the context of either clearer legislative intent than is provided by Title IX's ambiguous history—a statute based on Title VI and curiously followed by subsequent legislative mention of attorney's fees—compare *Amtrak, supra* at 459–461, 94 S.Ct. 690, or of manifestly disruptive consequences of private suit, see *id.* at 461–465, 94 S.Ct. 690; *SIPC, supra* at 421–423, 95 S.Ct. 1733, which are not evident for all possible Title IX claims. It is obviously significant that the enforcing agency urges recognition of private suit rights, see, e. g., *Allen v. State Board of Elections,* 393 U.S. 544, n. 23 at 557, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), particularly since H.E.W.'s position that private enforcement is at least a helpful supplement is a reasonable one, cf. *SIPC, supra* at 424–425, 95 S.Ct. 1733. In view of that stance, it may be improvident either hastily to infer an unexpressed legislative "intent" to bar any such suit, or merely to assume inconsistency between remedies.

As *amici curiae,* the Women's Equity Action League Educational and Legal Defense Fund and the National Organization for Women Legal Defense Fund contend in further support of plaintiffs that it is already patent under Title IX that "the remedies available have proven to be wholly inadequate to the task of protecting those rights", *Cannon, supra* at 1082. To the extent factual and concerned with delayed and circumscribed administrative enforcement, the argument cannot be accepted outright without opportunity for reply by defendant. In the light of H.E.W.'s long delay even in promulgating enforcing regulations, however, the contentions advanced are surely not insubstantial, and it seems unsound to dismiss this complaint in its entirety at the outset on sheer assumption that administrative enforcement may prove adequate while refusing to allow a threshold showing purporting to demonstrate the contrary.

For similar reasons, plaintiff Price's complaint may not be dismissed on its face despite failure to seek any administrative recourse whatsoever, since ordinarily beneficial and fair requirements of administrative exhaustion should not be imposed absent realistic possibility of a meaningful remedy. Although H.E.W. could hardly evince indifference to what amounts to a claim that Yale has not complied with the basic implementing regulation calling for Title IX "grievance procedures", 45 C.F.R. § 86.8(b), and while under the Title VI regulations also made applicable in Title IX matters, 45 C.F.R. § 86.71, an individual may make a written complaint which would at least obligate H.E.W. to make initial "prompt investigation" if the information provided "indicates a possible failure to comply" with Title IX duties, 45 C.F.R. § 80.7(b)–(c), there is good reason to believe that to leave Price to her administrative remedy would be an empty exercise. Putting to one side unconceded representations that the enforcement system is grossly deficient in actual operation, it is not realistic to expect even that "prompt" first-step administrative action—much less any multistage proceedings—could yield an effective remedy to one claiming imminent injury, with only a short interval between Yale's supposed abandonment of her complaint and the law school application process. Beyond the prayer for a court-ordered complaint mechanism, plaintiff Price has specifically requested investigation and a transcript notation in the interim that the disputed grade is under review, which clearly are potentially effective measures. Whether any such relief is proper is of course not the issue on the motion to dismiss, cf. *Guild of Buffalo, Inc. v. Sedita,* 441 F.2d 284, 288 (2 Cir. 1971), but can be immediately tested on plaintiff's now-pending motion for preliminary injunction.

As far as this plaintiff is concerned, defendant's attendant jurisdictional objection lacks compelling force. If the federal statutory claim may not rest on the jurisdictional grant extending to suits for relief "under any Act of Congress providing for the protection of civil rights", 28 U.S.C. § 1343(4), but cf. *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409 n. 1 at 412, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), the Court cannot hold with requisite certainty in this instance that the amount in controversy is inade-

quate to support proceedings under the general federal question grant of 28 U.S.C. § 1331. Defendant has also suggested that Title IX may be unconstitutional if construed to allow private suit, but advances no convincing authority for that contention in the situation presented.

For the reasons stated above, the instant motion to dismiss is accordingly hereby granted as to plaintiffs Alexander, Olivarius, Reifler, Stone and Winkler, and denied as to plaintiff Price.