Ronni **ALEXANDER**, Ann **Olivarius**, Pamela **Price**, Margery **Reifler** and Lisa **Stone**, Plaintiffs–Appellants,

v.

**YALE UNIVERSITY**, Defendant–Appellee.

**No. 559, Docket 79–7547.**

United States Court of Appeals, Second Circuit.

Argued April 16, 1980.
Decided Sept. 22, 1980.

---

Nadine Taub, Women's Rights Litigation Clinic, Rutgers School of Law, Newark, N. J. (Elizabeth Schneider, New York City, Anne E. Simon, Pillsbury & Simon, New Haven, Conn., of counsel), for plaintiffs—appellants.

S. Robert Jelley, New Haven, Conn. (William J. Doyle, Edward W. Dunham, Wiggin & Dana, New Haven, Conn., of counsel), for defendant—appellee.

Joan Vermeulen, Hoboken, N. J., and Michael Krinsky, New York City, for amici curiae The American Civil Liberties Union, The Women's Equity Action League Educational and Legal Defense Fund, Working Women's Institute, The National Conference of Black Lawyers and Black Women Organized for Political Action.

Nancy L. Davis, Joan Messing Graff, Judith E. Kurtz, San Francisco, Cal., for amici curiae Equal Rights Advocates, Inc. and Women Organized Against Sexual Harassment.

Before LUMBARD and MULLIGAN, Circuit Judges, and SPEARS, District Judge.*

LUMBARD, Circuit Judge:

Five women who were students at Yale University appeal from a judgment entered by Judge Burns on July 3, 1979, in the United States District Court for the District of Connecticut. The appellants alleged in their complaint that Yale was violating Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, and H.E.W.'s Title IX regulations, by refusing to consider seriously women students' complaints of sexual harassment by male faculty members and administrators. They argue that the district court erred in dismissing four of them as plaintiffs, in denying plaintiff Pamela Price's subsequent request for class certification, in excluding certain evidence from the trial of Price's claim, and in failing to grant the relief requested—an order enjoining Yale to institute a procedure for receiving and investigating complaints of sexual harassment—because Price failed to prove that she was sexually harassed. We affirm the judgment of the district court for Yale as to all of the plaintiffs.

I.

Section 1681 of Title IX (hereinafter "Title IX") states:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

Under the authority of § 1682, H.E.W. requires educational institutions receiving federal assistance to "adopt grievance pro-

---

* Honorable Adrian A. Spears, United States District Judge for the Western District of Texas, sitting by designation.

cedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 45 C.F.R. § 86.-8(b).

In an amended complaint filed on November 15, 1977, three female students, two female graduates, and one male professor at Yale alleged that Yale's "failure to combat sexual harassment of female students and its refusal to institute mechanisms and procedures to address complaints and make investigations of such harassment interferes with the educational process and denies equal opportunity in education" in violation of Title IX and H.E.W.'s regulation.[1] The plaintiffs sought as relief (1) a declaratory judgment that Yale's policies and practices regarding sexual harassment violate Title IX and (2) an order enjoining Yale, among other duties, "to institute and continue a mechanism for receiving, investigating, and adjudicating complaints of sexual harassment, to be designed and implemented under the supervision" of the district court.

The plaintiffs sought that relief on behalf of themselves and the class, which they purported to represent, of those Yale students and faculty members "who are disadvantaged and obstructed in their educational relations" by Yale's failure to combat sexual harassment. More specifically, they sued on behalf of (1) female students who have had to choose between tolerating sexual demands from "men in positions of authority at Yale" or sacrificing "any educational opportunity, benefit or chance to grow or advance educationally;" (2) female students who "are subject to the discriminatory atmosphere adverse to their educational development created by the practice of such sexual harassment;" and (3) all faculty members "whose professional effectiveness in teaching and in engaging in the pursuit of knowledge with students is seriously impaired by that contamination of the faculty/student relationship created by defendant's tolerance of said sexual pressures."

Additionally, each plaintiff alleged an injury which was "the result of a pattern, practice, and policy of defendant, its officers, agents, and employees, of neglecting and refusing to consider seriously complaints of sexual harassment of women students, with the effect of actively condoning continued sexual harassment of female students by male faculty members and administrators." Thus:

Ronni Alexander, a 1977 graduate of Yale College, alleged that she "found it impossible to continue playing the flute and abandoned her study of the instrument, thus aborting her desired professional career," because of the repeated sexual advances, "including coerced sexual intercourse," by her flute instructor, Keith Brion. Alexander further alleged that she attempted to complain to Yale officials about her harassment, but "was discouraged and intimidated by unresponsive administrators and complex and *ad hoc* methods."

Margery Reifler, a member of the Class of 1980, alleged that Richard Kentwell, coach of the field hockey team, "sexually harassed" her while she was working as that team's manager, and that she "suffered distress and humiliation . . . . and was denied recognition due her as team manager, all to her educational detriment." Reifler further alleged that she "wanted to complain to responsible authorities of defendant about said sexual harassment but was intimidated by the lack of legitimate procedures and was unable to determine if any channels for complaint about sexual harassment were available to her."

---

1. The plaintiffs alleged that Yale "receives Federal assistance," but Yale argues that the plaintiffs have failed to establish subject matter jurisdiction by failing to allege that they were subjected to discrimination in specific federally assisted programs or activities. However, in moving for dismissal, Yale accepted *arguendo* the allegations that it receives federal assistance and that incidents of sexual harassment pervade the university. Those allegations are sufficient at the pleading stage to establish a nexus between discrimination and federal assistance. Whether such a nexus actually exists is of course a question calling for proof. Yale never raised this issue in the protracted pretrial motions, and cannot stand on it now.

Pamela Price, a member of the Class of 1979, alleged that one of her course instructors, Raymond Duvall, "offered to give her a grade of 'A' in the course in exchange for her compliance with his sexual demands," that she refused, and that she received a grade of "C" which "was not the result of a fair evaluation of her academic work, but the result of her failure to accede to Professor Duvall's sexual demands." She further alleges that she complained to officials of Yale who failed to investigate her complaint and told her that "nothing could be done to remedy her situation."

Lisa Stone, a member of the Class of 1978, alleged that her discussions with a woman student who had been sexually harassed and the absence of an "established, legitimate procedure" for complaints of such harassment caused her "emotional distress," deprived her of "the tranquil atmosphere necessary to her pursuit of a liberal education," and put her "in fear of her own associations with men in positions of authority at Yale."

Ann Olivarius, a 1977 graduate, alleged that the absence of a procedure for complaining about sexual harassment "forced [her] to expend time, effort and money in investigating complaints herself, preparing them to be presented to responsible officials of defendant, and attempting to negotiate the complexities of *ad hoc* 'channels.'" Olivarius further alleged that she was "subjected to threats and intimidation from individuals involved in her investigations and was given no protection or encouragement by responsible officials of defendant."[2]

Then District Judge Newman, upon the opinion of Magistrate Latimer, dismissed all the plaintiffs but Price in an order entered on December 21, 1977. 459 F.Supp. 1 (D.Conn.1977). The court dismissed Stone and Olivarius on the ground that they had not asserted claims "of personal exclusion from a federally funded education program or activity, or of the personal denial of full participation in the benefits of such a program or activity in any measurable sense."

Believing that "[n]o judicial enforcement of Title IX could properly extend to such imponderables as atmosphere or vicariously experienced wrong," the court held that Stone and Olivarius "advance[d] no persuasive claim that they have been deprived of cognizable Title IX rights." The court dismissed Alexander, although she alleged a "personal experience of sexual harassment," on the ground that her graduation mooted her claim for equitable relief absent the "sheer conjecture" that she might someday wish to resume her flute studies. The court dismissed Reifler, although she too alleged a personal experience of sexual harassment, because she had not complained to anyone at Yale. Citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the court concluded that Reifler's claim "that general university inertia should be equated with policy and has 'the effect of actively condoning ... sexual harassment' is simply not adequate to show that Yale acted to deny her any right;" and the court further held that "the concept of mere *respondeat superior* appears ill-adapted to the question of Title IX sex discrimination based on harassment incidents." As to Price, the court held that "academic advancement conditioned upon submission to sexual demands constitutes sex discrimination in education," and it therefore refused to dismiss Price.

Price subsequently sought class certification for female students at Yale who are discriminated against on the basis of sex by Yale's policies and practices "with respect to the sexual harassment of women students by men in positions of authority, in particular by male faculty members and administrators, specifically by having to choose between toleration of, or compliance with, sexual demands and pressures by such men and any educational opportunity, benefit or chance to grow or advance educationally." Up to this time, the district court had not passed judgment upon the plaintiffs' request for class certification. Price also sought discovery aimed, in addition to

---

**2.** The Yale faculty member, John Winkler, also alleged an injury, but we do not recite his allegations or the district court's grounds for dismissal because Winkler did not appeal.

adducing evidence supporting her personal claim, at adducing evidence supporting the claims of the class. Magistrate Latimer denied both the class certification and the extensive discovery request. In an unreported opinion, Magistrate Latimer found "no compelling reason to certify a class, there being no reasonable probability that plaintiff's individual claim will become moot in the near future ... and any equitable relief to which she may be possibly entitled being obviously such as to inure to the benefit of all." He then narrowed Price's discovery request correspondingly.

After the trial of Price's claim, Judge Burns found that "the alleged incident of sexual proposition did not occur and the grade of 'C' which Miss Price received on the paper submitted to Professor Duvall and the grade of 'C' which she received in his course did not reflect consideration of any factor other than academic achievement." Accordingly, although the district court agreed that Yale's procedures for handling complaints of sexual harassment were inadequate, it refused to enjoin Yale to establish a different procedure, concluding, "[I]t does not follow that, if Yale University failed to articulate appropriate procedures to deal with such a claim, a plaintiff who can show neither an improper advance nor the injury she claimed has a grievance to be redressed by this court." The district court therefore entered judgment for Yale, and the five female plaintiffs (hereinafter "appellants") brought their appeal.

## II.

We first consider the claims raised by Olivarius, Stone, Alexander and Reifler. We find that the district court should be affirmed as to these plaintiffs because none of them presents a justiciable case or controversy.

■ In order to proceed with suit in the federal courts, a party seeking relief must establish both that he or she has suffered a "distinct and palpable injury," *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57

L.Ed.2d 595 (1978); *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) and that "the exercise of the Court's remedial powers would redress the claimed injury." *Duke Power, supra*, 438 U.S. at 74, 98 S.Ct. at 2631; *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *City of Hartford v. Towns of Glastonbury*, 561 F.2d 1032, 1052 (2nd Cir. 1976) (en banc) (Kaufman, C. J., concurring), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 766, 54 L.Ed.2d 781 (1978). The injury must be suffered personally by the party invoking the court's assistance, and the relief requested must redound to that party's personal benefit.

■ These requirements are often said to be the prerequisites for "standing" to bring suit. It is also mandatory that they be satisfied throughout the course of adjudication by the courts. This "time element of standing" comes under the rubric of mootness doctrine. *See Pickus v. U. S. Board of Parole*, 543 F.2d 240, 242 n.3 (D.C.Cir.1976); *Nader v. Saxbe*, 497 F.2d 676, 682 (D.C.Cir. 1974); Monaghan, *Constitutional Adjudication: The Who and the When*, 82 Yale L.J. 1363, 1384 (1973). A party's case or controversy becomes moot either when the injury is healed and only prospective relief has been sought or when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury. We find that none of the claims brought by these four plaintiffs satisfies the prerequisites of justiciability.

■ Olivarius's claim on appeal from her dismissal presents the weakest case for justiciability. Her allegation that she spent her own time and money investigating women students' complaints of sexual harassment because Yale refused to do so, and that Yale gave her "no protection or encouragement" when she "was subjected to threats and intimidation from individuals involved in her investigations," fails to state the "distinct and palpable injury to [herself]" that is the first requirement of standing, and is inexorably linked to the

Article III requirement of a case or controversy. *Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206. Olivarius spent her time and money upon her own volition. The allegation that Yale failed to protect and encourage her in her investigations does not allege an injury, for it does not allege that Olivarius was hurt—in any way—by Yale's failure. Accordingly, we affirm the dismissal of her complaint.

 As for the other plaintiffs, including Price, whose claim we discuss below, their graduations [3] appear to prevent the courts both from addressing the predominant injury relied upon—deprivation of an educational environment free from condoned harassment—and from awarding the relief requested—an order directing Yale to institute effective procedures for receiving and adjudicating complaints of sexual harassment. None of these plaintiffs at present suffers from the alleged injury. Nor would the grant of the requested relief aid these plaintiffs in the slightest. Thus their claims appear moot.

It is perhaps more important to note that, as Yale's counsel has assured us in brief and oral argument, Yale in fact has adopted a set of procedures for hearing such complaints. The procedures were proposed by a committee consisting of faculty, administrators and students, in a report published March 1979, following a year of careful study specifically limited to the problems involved in structuring procedures appropriate for consideration of student complaints of sexual harassment. Furthermore, Yale's counsel has also assured us that although the procedures were originally designed only to receive and consider claims of sexual harassment occurring at Yale College, their jurisdiction has since been expanded to afford consideration of claims by those who suffer harassment while participating in any program sponsored by the University. We have no reason to doubt that the procedures now in effect will tend to alleviate the "atmosphere of inequality" alleged

by plaintiffs in this suit. Thus, it appears that the major relief sought in this suit has already been granted.

Nothing more need be said about the complaint brought by Stone. It was based solely upon the fear of association with male faculty and administrators and the general atmosphere of tolerance or condonement of sexual harassment. Graduation has entirely mooted her claim. There is nothing a complaint procedure or any other remedy can do now to redress her alleged injuries. Therefore the exercise of federal court power to pass on her claim "would be gratuitous and thus inconsistent with the Art. III limitation." *Simon, supra,* 426 U.S. at 38, 96 S.Ct. at 1924.

 Both Alexander and Reifler, however, allege additional personal injuries. Nevertheless, what remains of their claims does not seem sufficient to justify judicial action. Their alleged injuries are too speculative. Alexander asserts that sexual harassment by her flute instructor in a University—sponsored music program deterred her from a successful career as a flutist. Needless to say, this is a highly conjectural claim. Reifler claims that sexual harassment by her field hockey coach caused her to leave the team and fail to receive a varsity letter. What harm she has suffered as a result is not specified.

In a Title IX suit, it is the deprivation of "educational" benefits which, once proven, allows the courts to afford relief. The statute recognizes that loss of educational benefits is a significant injury, redressable by law. Where the alleged deprivation, however, relates to an activity removed from the ordinary educational process, a more detailed allegation of injuries suffered as a result of the deprivation is required. This is not to say that exclusion of all members of one sex from all extra—curricular activities would not give rise to palpable injuries which could be redressed by the courts. Rather, when such activities are involved, more specific allegations as to harm suf-

---

**3.** The case was briefed and argued prior to the graduation of plaintiff Reifler, a member of the Yale College class of 1980. We have no reason to believe that Reifler has not graduated with her class, and we therefore apply our decision as to mootness to her claim as well.

fered are necessary to assure "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends . . . ." *Duke Power, supra,* 438 U.S. at 72, 98 S.Ct. at 2630, quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), and to assure that the exercise of the courts' remedial powers may be designed to redress the alleged injuries.

Moreover, it is difficult to imagine what relief a court could possibly award Reifler and Alexander. No money damages have been requested, and as already noted, graduation has mooted their claims for grievance procedures. As the district court remarked, there is nothing left that a court could do to redress Alexander's injury "absent sheer conjecture that [she] may in the future wish to resume study in a field allegedly abandoned at Yale because of 'sexual demands' by her tutor." 459 F.Supp. at 3. In appellants' brief on appeal a suggestion has been made that a court might award Reifler a varsity letter, yet we do not believe that such a possibility warrants judicial scrutiny, particularly when the alleged injury is so uncertain.[4] Because we do not believe that the courts should indulge in speculation of the sort required here, we also affirm the dismissal of the complaints of Alexander and Reifler.

We thus agree with the district court that only plaintiff Price presented a justiciable claim for relief under Title IX. That claim, however, was tried and dismissed. We now turn to her assertions on appeal.

### III.

■ The district court found that Price failed at trial to prove that her alleged sexual harassment had in fact occurred. Price argues that, her failure to prove the incident of harassment notwithstanding, the district court should have enjoined Yale to adopt a complaint procedure such as

H.E.W. requires, see 45 C.F.R. § 86.8(b), because the gravamen of her complaint is that she was deprived of an institutional grievance procedure that would promptly and equitably have resolved her claim. She also argues that the district court erred in refusing to certify her suit as a class action, in limiting the evidence at her trial to that relevant to her own alleged harassment, and in refusing to reopen the record after trial to receive testimony of one who supposedly could verify her allegation. We disagree. As Price failed to prove her case, she failed to prove any perceptible harm and therefore she lacks standing to attack Yale's failure to establish a complaint procedure, and she is not a proper representative of the purported class.

■ Price's failure of proof forecloses her argument that the district court erred in refusing to certify her suit as a class action, for the trial court concluded that Price is not a member of the class of discriminatees she purported to represent. She is not, therefore, a proper class representative under Fed.R.Civ.Proc. 23(a). Consequently, there is no reason for us to remand for class certification of Price's claim. *East Texas Motor Freight System v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977). It also follows that the district court did not err in limiting the evidence at trial to that which was relevant to Price's claim.

■ Finally, the district court did not abuse its discretion in denying Price's post–trial motion to receive the testimony of Richard Medley, a Yale student who once claimed to have witnessed the aftermath of Price's harassment. To support her motion, Price submitted affidavits by two Yale students who swore that two years after the alleged harassment Medley had told them that he had seen Price leave Duvall's office

---

4. Reifler's standing to bring suit is lacking for another reason: she did not notify any University officials of her harassment allegations. The complaint in this case centers around the University's failure to make any serious response to registered complaints of sexual harassment, thereby discouraging females from

availing themselves of the full benefits of a Yale education. Reifler, however, does not allege that she made any requests of Yale administrators which were ignored or given perfunctory attention. Thus, she seems an improper party to bring charges of administrative laxity.

visibly upset, that he had asked Duvall what had happened, and that Duvall had said that he had offered Price an "A" in return for sexual favors, but Price refused. Price also submitted the affidavit of her attorney, who swore that Medley had subsequently told her that he had concocted this story. In opposition to Price's motion, Yale submitted the affidavit of Medley; who swore that he had been drunk and had lied when he made those statements to the Yale students.

The district court acted well within its discretion in refusing to reopen the record after trial to receive Medley's testimony, the weight of which could at best have been slight.

We affirm the judgment for Yale as to all of the plaintiffs.