BATH PETROLEUM STORAGE, INC. and E.I.L. Petroleum, Inc. Plaintiffs,

v.

Gregory H. SOVAS, individually and as Director of the Division of Mineral Resources, New York State Department of Environmental Conservation; Bradley J. Field, individually and as Acting Director of the Bureau of Oil and Gas Regulation, Division of Mineral Resources, New York State Department of Environmental Conservation; Thomas W. Pearson, individually, and as Regional Water Engineer, Region 8, Division of Water, New York State Department of Environmental Conservation; John Cahill, individually and as Commissioner of the New York State Department of Environmental Conservation; New York State Department of Environmental Conservation; and the State of New York, Defendants.

No. 98–CV–347(LEK/RWS).

United States District Court, N.D. New York.

Jan. 10, 2000.

and *before* any discovery has commenced on the disputed issue currently before the Court.

John J. Privitera, McNamee, Lochner Law Firm, Albany, NY, Ronald H. Sinzheimer, Office of Ronald H. Sinzheimer, Albany, NY, W. Michael Holm, Jerry William Boykin, Redmon, Boykin Law Firm, Alexandria, VA, for plaintiffs.

Kathleen Liston Morrison, Office of Atty. Gen., Albany, NY, for defendant.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Plaintiffs, the owner and operator of an underground liquid petroleum gas storage facility, commenced this action seeking declaratory and injunctive relief. Presently before the Court is Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. For the reasons set forth below, Defendants' motion is granted.

## I. BACKGROUND

Plaintiffs have operated a small liquefied petroleum gas ("LPG") salt cavern storage facility in Bath, New York since 1983. The salt caverns are formed by drilling into the earth's surface until the salt layer is reached and then pumping fresh water into the salt layer to form caverns by solutioning, dissolving the salt. Brine is created from the process of the solutioning. In 1992, Plaintiffs received permission from defendant New York State Department of Environmental Conservation ("DEC") to drill new wells and create caverns to expand its facility. Plaintiffs spent approximately $1 million on the expansion.

In 1996, Plaintiffs entered into an agreement with CNG Transmissions Corporation that contemplated using Plaintiffs' facilities for natural gas storage. Plaintiffs then submitted a permit modification application to defendant DEC to modify the underground salt storage capacity to increase their ability to store LPG and natural gas. Plaintiffs also submitted an application to the Environmental Protection Agency ("EPA") for a permit allowing disposal of brine created in the solutioning process through underground injection wells. CNG Transmissions ("CNG"), Plaintiffs' lessee, also submitted an application with the Federal Energy Regulatory Commission ("FERC") for the project.

Defendant DEC notified Plaintiffs that the permit modification was incomplete absent additional information. DEC asserted that it required regulatory review, approval, and a permit prior to the construction and use of the well. Defendant DEC also contended that the proposed storage caverns be subject to various requirements as to their construction and operation, including sonar testing. In January 1998, FERC denied CNG's application, and the natural gas project subsequently fell through. Plaintiffs then commenced this action seeking declaratory and injunctive relief.

## II. ANALYSIS

Defendants have moved to dismiss this action for lack of subject matter jurisdiction, or, in the alternative, failure to state a claim. Defendants contend that since the natural gas project with CNG has been abandoned that there is no longer a justiciable dispute.

■ Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case. *See Burke v. Barnes,* 479 U.S. 361, 363, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987). The duty of this Court is to decide live controversies, "not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895). To qualify as a case fit for federal-court adjudication, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. New-kirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (quoting *Steffel v. Thompson,* 415 U.S. 452, 459, n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)) (internal quotation marks omitted). Accordingly, a case that is "live" at the outset may become moot "when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." *Alexander v. Yale,* 631 F.2d 178, 183 (2d Cir.1980).

■ Here, the lack of any underlying transaction threatened by a regulatory impasse precludes this Court's exercise of jurisdiction. In *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), the Supreme Court, noting the difficulty in fashioning a precise test of universal application for determining whether a request for declaratory relief had become moot, held that, basically, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.,* at 273, 61 S.Ct. 510.[1] According to Plaintiffs, the need for a declaratory judgment stems from defendant DEC's insistence on sonar testing and an additional permit for brine disposal, which conflicts with a federal statute preempting such state mandates. Plaintiffs maintain that Defendants' conduct therefore constitutes a "continuing, existing and real injury." It does not. There is currently no transaction being impeded by state regulatory action, and any potential conflict between state and federal agencies was mooted by the Federal Energy Regulatory Commission's January 1998 denial of CNG's application.

Any harm Plaintiffs envision arises from a speculative future conversion of the LPG caverns to natural gas storage. Plaintiffs complain that Defendants have placed them in a "Catch 22" situation in that Plaintiffs must either comply with the proposed requirements or face continual "stonewalling." That strikes the Court as a hallmark of regulation: comply or face appropriate sanctions. This is not one of those rare situations, such as in the abortion context, where an issue would continually elude adjudication on mootness grounds. If Plaintiffs opt to proceed with the conversion independently of a transaction or secure a new partner, then this Court can properly resolve the preemption and other related issues.

## III. CONCLUSION

Accordingly, it is hereby

ORDERED that Defendants' motion to dismiss for lack of subject matter jurisdic-

---

1. Plaintiffs' reliance upon *Town of Springfield, Vt. v. McCarren,* 549 F.Supp. 1134 (D.Vt. 1982), *aff'd,* 722 F.2d 728 (2d Cir.1983), is misplaced: that case focused upon the existence of a federal question, not whether a constitutional case or controversy had arisen—the issue before this Court.

tion is GRANTED and the case DISMISSED in its entirety; and it is

FURTHER ORDERED that the Clerk of the Court serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.