**AURELIA D., as Next Friend of LaShonda D., Plaintiffs,**

v.

**MONROE COUNTY BOARD OF EDUCATION, et al., Defendants.**

Civ. A. No. 94–140–4–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 29, 1994.

Debra G. Gomez, Macon, GA, for plaintiff.

Wallace Warren Plowden, Jr., William T. Prescott, Macon, GA, for defendants.

### *ORDER*

OWENS, Chief Judge.

Plaintiff Ms. D. has brought suit on behalf of her daughter LaShonda against defendants the Monroe County School Board ("the Board"), Mr. Dumas, Superintendent of the Board, and Mr. Querry, Principal of Hubbard Elementary School concerning alleged harassment of LaShonda by a fellow classmate. Defendants have moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In evaluating this motion, the court considered the facts as alleged in the complaint. After careful consideration of the arguments of counsel and the relevant statutes and case law, the court issues the following order.

### *I. FACTS*

Beginning about December 17, 1992, and continuing through May 19, 1993, LaShonda began to be harassed by a fellow fifth-grade student, G.F., during school hours. The harassment consisted of repeated attempts by G.F. to touch LaShonda's breasts and vaginal area, and use of vulgar language towards LaShonda.[1] G.F. spoke offensively towards LaShonda on or about January 2, 1993, and January 20, 1993. After each of these incidents, LaShonda notified her classroom teacher, Ms. Fort. Ms. D. called Ms. Fort to follow up on her daughter's complaints and Ms. Fort assured her that Principal Querry had been notified.

On February 3, 1993, while in gym class, G.F. placed a door stop in his pants and behaved in a sexually suggestive manner towards LaShonda. LaShonda reported this incident to her gym teacher. G.F. engaged

---

**1.** The vulgar language included statements such as, "I want to get in bed with you" and "I want to feel your boobs".

in harassing behavior again on February 10, 1993, and on March 1, 1993, which LaShonda reported to her teachers. LaShonda and other girls who had been harassed by G.F. asked their teacher if they could go as a group to the principal's office but were not allowed to do so. On approximately April 12, 1993, while in a school hallway, G.F. rubbed his body against LaShonda in a suggestive manner. LaShonda once again notified her teacher of G.F.'s behavior.

On May 19, 1993, LaShonda complained to her mother that she did not know how much longer she could tolerate G.F.'s actions. When contacted by Ms. D., Mr. Querry said that he would "threaten the boy (G.F.) a little bit harder". Mr. Querry also asked why LaShonda "was the only one complaining". Ms. D. then called the Board's superintendent to complain about G.F. and Mr. Querry.

The complaint further alleges that LaShonda's assigned seat in Ms. Fort's class was next to G.F.'s seat, but that she was not allowed to change seats until she had complained of the offensive behavior for over three months. Plaintiff also alleges that G.F. pled guilty to charges of sexual battery concerning the school incidents.

As a result of G.F.'s conduct, LaShonda's mental health and ability to concentrate were detrimentally affected and her grades declined. Plaintiff seeks to hold the school responsible under § 1983 and Title IX because they failed to discipline G.F. or otherwise act to curtail his conduct which proximately caused LaShonda's mental and emotional stress. Plaintiff alleges that the Board's failure to institute a policy concerning student-to-student sexual harassment proximately caused her daughter's distress.

In count two, plaintiff charges that the school engaged in racial discrimination when it disciplined G.F. for striking a white female student and not when he harassed LaShonda, a black female.

## II. DISMISSAL STANDARD

■ A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. A complaint should not be dismissed for failure to state a claim unless the plaintiff can prove no set of facts entitling him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *Pataula Electric Membership Corp. v. Whitworth*, 951 F.2d 1238, 1240 (11th Cir.1992). The court is to presume true all of the complaint's allegations and make all reasonable inferences in favor of the plaintiff. *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993). The rules require nothing more than "a short and plain statement" that will give the defendant fair notice of the claims and the grounds upon which they are based. *Conley*, 355 U.S. at 47, 78 S.Ct. at 103.

## III. DISCUSSION

### A. SECTION 1983—FAILURE TO PROTECT CLAIM

The complaint alleges that the principal was responsible for supervising and disciplining students and that his failure to intervene and discipline G.F. or have a policy concerning sexual harassment of students proximately caused LaShonda's mental and emotional distress. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." Plaintiff contends that defendants deprived LaShonda of her liberty interest in being free from sexual harassment and intrusions on her personal security by failing to adequately protect her from her classmate's unwanted advances. *See Ingraham v. Wright*, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977).

■ The constitutional guarantees limit the conduct of state actors. The state has no constitutional duty to protect its citizens from private persons. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1002, 103 L.Ed.2d 249 (1989); *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364 (3rd Cir.

1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993).

■ Only where the state has acted to render the person incapable, or significantly less capable, of caring for or protecting himself does the state owe a duty of care to the individual. For example, when the state enters into a special relationship with a citizen, it may be held liable for failing to care for and protect him. *See Youngberg v. Romeo,* 457 U.S. 307, 309, 102 S.Ct. 2452, 2454, 73 L.Ed.2d 28 (1982) (when a person is institutionalized and made dependent on the state, the state undertakes a duty to provide certain services to the person); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (state required to provide adequate medical care to incarcerated prisoners). Section 1983 liability attaches only when the state breaches an affirmative duty which it owes to its citizens. *See Cornelius v. Town of Highland Lake, Ala.,* 880 F.2d 348, 353 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). The Supreme Court has not extended the duty of care based upon a "special relationship with the state" beyond the cases of incarcerated prisoners and involuntarily committed mental patients. *J.O. v. Alton Community Unit Sch. Dist. 11,* 909 F.2d 267, 272 (7th Cir. 1990).

■ The state can also be charged with a duty of care where it places the individual in a dangerous situation or makes him more vulnerable to harm. *Cornelius,* 880 F.2d at 352; *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990). In *Wood,* an officer arrested an intoxicated driver and impounded his car, leaving his female passenger on the roadside in a high crime area at 2:30 a.m. The woman was raped by a man who offered her a ride home. The court found that under the facts alleged the officer owed the woman a duty not to be deliberately indifferent to her personal security. This duty arose because the officer acted to place her in danger. The common thread between cases where § 1983 liability has been imposed for harm inflicted by third parties is that the state affirmatively placed the individual in a position where he is significantly less able to care for himself than an ordinary citizen. The key factor is state control or custody over a person. *See Russell v. Fannin County Sch. Dist.,* 784 F.Supp. 1576, 1582 (N.D.Ga.1992).

■ In contrast to this line of cases, LaShonda has not alleged any special relationship between herself and the school, nor has she alleged that defendants placed her in a dangerous situation. In short, the state did not act to make her less capable of caring for herself. Plaintiff relies upon the mandatory attendance policy to support a special relationship between the school and its students. However, a number of other courts have rejected this suggestion. The Third Circuit, in *Middle Bucks,* reasoned that despite a mandatory attendance policy and the fact that a school has *loco parentis* authority over the children, students are not in state custody during school hours. *Middle Bucks,* 972 F.2d at 1371. In concluding that parents remain the primary caretakers of their children, the Third Circuit considered that parents decide whether to educate their children at home or in public or private schools, and that children are in school for a limited time and can turn to their parents for help each day. *Id.* The Seventh Circuit came to the same conclusion in *Alton,* 909 F.2d at 272–73. This court agrees with the reasoning in both *Middle Bucks* and *Alton.* LaShonda has not alleged facts from which any of the defendants owed her a duty of protection.[2] Accordingly, plaintiff's claim under § 1983 is **DISMISSED** for failure to state a claim upon which relief can be granted.

## B. QUALIFIED IMMUNITY

■ State officials exercising discretionary powers are "shielded from liability for civil

---

2. Plaintiff urges that defendants are liable under § 1983 because they failed to properly train LaShonda's teachers in deliberate indifference to her right to personal security. *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, *Canton* involved an allegation that police officers deliberately denied medical care to someone in their custody. The holding imposes no duty on the state to train state agents to prevent harm from private actors to persons not in state control or custody.

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "[A] necessary concomitant to the determination of whether a constitutional right ... is clearly established at the time the defendant acted is the determination of whether the plaintiff has asserted a constitutional violation at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Having found that plaintiff has not alleged a deprivation of a constitutional right, defendants Dumas and Querry are entitled to qualified immunity. *Id.*

## C. *TITLE IX*

 Plaintiff also alleges that the failure to protect LaShonda from her classmate's advances violated Title IX.[3] 20 U.S.C. § 1681, *et seq.* The Supreme Court has held that Title IX is enforceable through an implied right of action. *Franklin v. Gwinnett County Public Sch.,* 503 U.S. 60, 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992). However, only federally-funded institutions can be held liable for violating the statute. *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 901 (1st Cir.1988). Accordingly, plaintiff's claims against individuals under Title IX are **DISMISSED.**

 Moreover, plaintiff's claim against the Board has no basis in law. The sexually harassing behavior of a fellow fifth grader is not part of a school program or activity. Plaintiff does not allege that the Board or an employee of the Board had any role in the harassment. Thus, any harm to LaShonda was not proximately caused by a federally-funded educational provider.

Another district court has suggested that a Title IX cause of action could be based upon allegations of a school's inaction in the face of complaints of student-to-student harassment where the inaction was intended to discriminate against the child on the basis of sex. *Doe v. Petaluma City Sch. Dist.,* 830 F.Supp. 1560, 1576 (N.D.Cal.1993). However, this court finds no basis for such a cause of action in Title IX or case law interpreting it.

## D. *SECTION 1981—RACIAL DISCRIMINATION CLAIM*

 Principal Querry disciplined G.F. after he struck a white girl and plaintiff asserts that his failure to act accordingly when G.F. harassed LaShonda displayed the Board's intent to discriminate on the basis of race.[4] Complaint ¶ 31. The court finds that this allegation fails to state a cause of action against the Board under 42 U.S.C. § 1981.[5] To pursue a claim against the School Board under § 1981, plaintiff must show that the conduct was the result of a policy or custom of the Board.

The Civil Rights Act precludes imposition of liability on the basis of a supervisory position alone. *Jett v. Indep. Sch. Dist.,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A supervisory official may be held liable for a civil rights violation where it can be shown that a constitutional violation has occurred as a direct result of a policy or procedure of the supervising official. *Jett,* 491 U.S. at 735–36, 109 S.Ct. at 2722–23.

Absent allegations that the Board had a policy of racial discrimination in the imple-

3. Title IX, 20 U.S.C. § 1681, prohibits discrimination on the basis of sex in the provision of educational services by federally-funded educational programs. Section 1681(a) provides that "[n]o person ... shall, on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance...." The definition of a "program or activity" includes "all of the operations of ... a local educational agency ... or other school system." 20 U.S.C. § 1687(2)(B).

4. The complaint does not allege that Principal Querry had an intent to discriminate on the basis of race.

5. The complaint states that the racially discriminatory actions violate "both the Education Act of 1972 and the Civil Rights Act of 1991." Since 20 U.S.C. § 1681, *et seq.,* concerns gender discrimination, the court interprets this paragraph of the complaint as alleging a claim under 42 U.S.C. § 1981 alone.

mentation of discipline, count two of the complaint fails to state a claim and should be **DISMISSED**.

### IV. CONCLUSION

Not every tort can be remedied under federal law. Plaintiff, in both her § 1983 and Title IX claims, seeks to hold the school Board and the elementary principal responsible for the actions of a third party where neither plaintiff nor the third party is under the school's custody. The Due Process Clause does not "transform every tort committed by a state actor into a constitutional violation." *DeShaney,* 489 U.S. at 202, 109 S.Ct. at 1006 (quotations omitted).

Defendants' motion to dismiss the complaint in its entirety is **GRANTED**. The complaint is **DISMISSED** without prejudice.

**SO ORDERED,** this 29th day of August, 1994.