United States Court of Appeals,

Eleventh Circuit.

No. 94-9121.

Aurelia DAVIS, a/n/f of Lashonda D., Plaintiff-Appellant,

v.

MONROE COUNTY BOARD OF EDUCATION, Charles Dumas and Bill Querry,
Defendants-Appellees.

Feb. 14, 1996.

Appeal from the United States District Court for the Middle
District of Georgia. (No. 94-CV-140-4MAC(WDO), Wilbur D. Owens,
Judge.

Before BIRCH and BARKETT, Circuit Judges, and HENDERSON, Senior
Circuit Judge.

BARKETT, Circuit Judge:

Aurelia Davis, as mother and next friend of LaShonda D.,
appeals the district court's order dismissing her claims under
Title IX and § 1983 against the Monroe County Board of Education
("Board"), Board Superintendent Charles Dumas and elementary school
Principal Bill Querry (collectively "defendants"). Davis'
complaint for injunctive relief and compensatory damages alleged
that LaShonda was sexually harassed on a continuous basis by a
male, fifth-grade classmate, that defendants knew of the harassment
yet failed to take any meaningful action to stop it and protect
her, and that LaShonda suffered harm as a result of their failure
to act. The defendants' failure to act, Davis asserted,
discriminated against LaShonda and denied her the benefits of a
public education in violation of Title IX of the Education
Amendments of 1972, 20 U.S.C. §§ 1681-88 (1988). Davis also
claimed that defendants' omissions violated LaShonda's liberty

interest to be free from sexual harassment and from intrusions on her personal security in violation of her substantive due process rights under the United States Constitution.

The district court dismissed the Title IX claim against the Board, concluding that

> [t]he sexually harassing behavior of a fellow fifth grader is not part of a school program or activity. Plaintiff does not allege that the Board or an employee of the Board had any role in the harassment. Thus, any harm to LaShonda was not proximately caused by a federally-funded educational provider.

*Aurelia D. v. Monroe County Bd. of Educ.*, 862 F.Supp. 363, 367 (M.D.Ga.1994). The court also dismissed the § 1983 due process claims against the Board and the individual defendants.

On appeal, Davis argues that the court erred by dismissing her Title IX claim against the Board[1] and by dismissing her § 1983 due process claims against all defendants. She also contends that she made an equal protection claim on which the district court failed to rule. Because we find them without merit, we reject Davis' arguments regarding the due process and equal protection claims without further discussion. *See* 11th Cir. Rule 36-1. For the reasons that follow, however, we conclude that Davis' allegations that the Board knowingly permitted a hostile environment created by another student's sexual harassment of LaShonda state a valid Title IX claim against the Board and accordingly we reverse the dismissal of her complaint as to that claim.

## I. BACKGROUND

Davis' factual allegations, presumed as true in our review of

---

[1]Davis does not appeal the district court's dismissal of the Title IX claims against the individual defendants.

a motion to dismiss, *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993), can be summarized as follows.  Over the six-month period between December 1992 and May 1993, "G.F.," a fellow fifth-grader at a Monroe County elementary school, sexually harassed and/or abused LaShonda by attempting to fondle her, fondling her, and directing offensive language toward her.   In December, for instance, G.F. attempted to touch LaShonda's breasts and vaginal area, telling her, "I want to get in bed with you," and "I want to feel your boobs."  Two similar incidents occurred in January 1993.  In February, G.F. placed a doorstop in his pants and behaved in a sexually suggestive manner toward LaShonda.   Other incidents occurred later in February and in March.  In April, G.F. rubbed against LaShonda in the hallway in a sexually suggestive manner.  G.F.'s actions increased in severity until he finally was charged with and pled guilty to sexual battery in May 1993.

LaShonda reported G.F. to her teachers and her mother after each of the incidents and, after all but one of the incidents, Davis called the teacher and/or the principal to see what could be done to protect her daughter.  The requests for protection went unfulfilled.  Following one incident, for example, LaShonda and other girls whom G.F. had sexually harassed asked their teacher for permission to report G.F.'s harassment to the principal.   The teacher denied the request, telling the girls, "[i]f he [the principal] wants you, he'll call you."  After LaShonda told her mother of another incident of harassment, adding that she "didn't know how much longer she could keep him off her," Davis spoke with Principal Querry and asked what action would be taken to protect

LaShonda. Querry responded, "I guess I'll have to threaten him [G.F.] a little bit harder," and he later asked LaShonda "why she was the only one complaining." LaShonda and Davis also asked that LaShonda, who had an assigned seat next to G.F., be allowed to move to a different seat. Even this request was refused and she was not allowed to move her seat away from G.F. until after she had complained for over three months. School officials never removed or disciplined G.F. in any manner for his sexual harassment of LaShonda.

Finally, the complaint alleged that G.F.'s uncurbed and unrestrained conduct severely curtailed LaShonda's ability to benefit from her elementary school education, lessening her capacity to concentrate on her schoolwork and causing her grades, previously all As and Bs, to suffer. The harassment also had a debilitating effect on her mental and emotional well-being, causing her to write a suicide note in April 1993.

## II. STANDARD OF REVIEW

Reviewing the claim *de novo,* we will uphold the dismissal only if it appears beyond a doubt that the allegations in the complaint do not constitute a claim upon which relief may be granted. *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1484 (11th Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Taylor v. Ledbetter,* 818 F.2d 791, 794 n. 4 (11th Cir.1987) (en banc), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989) (quotation omitted).

## III. DISCUSSION

Title IX provides in pertinent part as follows:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

20 U.S.C. § 1681(a) (1988).  It is undisputed that the Monroe County School System is a recipient of federal financial assistance.  Accordingly, the issue before us is whether the Board's alleged failure to take action to stop G.F.'s sexual harassment of LaShonda "excluded [her] from participation in, ... denied [her] the benefits of, or ... subjected [her] to discrimination under" the Monroe County educational system on the basis of her sex.

Davis argues that the Board's failure to stop the sexual harassment discriminated against LaShonda and denied her the benefits of her education on the basis of sex.  In support of this argument, Davis urges us to apply sexual harassment principles from the more extensive caselaw of Title VII, which prohibits sex discrimination in the workplace.[2]  In relevant part, Title VII requires an employer to take steps to assure that the working environment of its employees is free from sexual harassment[3] that

---

[2]Title VII makes it unlawful "for an employer ... to discriminate against any individual ... because of such individual's ... sex."  42 U.S.C. § 2000e-2(a)(1) (1988).

[3]Sexual harassment involves unwelcome sexual advances, requests for sexual favors, and other unwelcome verbal or physical conduct of a sexual nature.  29 C.F.R. § 1604.11(a) (1991).  Such harassment constitutes actionable sex discrimination in the workplace either as "quid pro quo" sexual harassment, which conditions employment benefits upon sexual favors, or as "hostile environment" sexual harassment, which creates an intimidating, hostile or offensive working environment that unreasonably interferes with an individual's work performance. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57,

is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (quotation omitted). The Board contends, however, that Title VII principles are not applicable to Title IX cases such as the present one.

Enacted in 1972, Title IX was designed to protect individuals from sex discrimination by denying federal financial aid to those educational institutions that bear responsibility for sexually discriminatory practices. *Cannon v. University of Chicago,* 441 U.S. 677, 704 & n. 36, 99 S.Ct. 1946, 1961 & n. 36, 60 L.Ed.2d 560 (1979) (citing 117 Cong.Rec. 39252 (1971)). "It is a strong and comprehensive measure which ... is needed if we are to provide women with solid legal protection as they seek education and training for later careers...." *Id.* at 704 n. 36, 99 S.Ct. at 1961 n. 36 (quoting Sen. Birch Bayh, 118 Cong.Rec. 5806-07 (1972)). To accomplish this goal, employees and students of federally funded educational institutions who are discriminated against on the basis of sex have a private right of action under Title IX for injunctive relief and compensatory damages. *Id.* at 717, 99 S.Ct. at 1968; *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 75-76, 112 S.Ct. 1028, 1037-38, 117 L.Ed.2d 208 (1992). Moreover, in interpreting Title IX, "[t]here is no doubt that if we are to give [it] the scope that its origins dictate, we must accord it a sweep as broad as its language." *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912, 1918, 72 L.Ed.2d 299 (1982)

62, 65, 106 S.Ct. 2399, 2403, 2404, 91 L.Ed.2d 49 (1986).

(quotation omitted).

Although the Supreme Court recognized a private right of action under Title IX in 1979, *see Cannon,* 441 U.S. at 717, 99 S.Ct. at 1968, until recently the denial of financial aid was the only remedy available to a Title IX plaintiff. Accordingly, early lawsuits brought under Title IX primarily challenged discriminatory practices in athletic programs and admissions policies. *See, e.g., id.* at 680, 99 S.Ct. at 1949. In 1992, however, the Supreme Court unanimously allowed monetary damages to private plaintiffs for intentional violations of Title IX, *see Franklin,* 503 U.S. at 76, 112 S.Ct. at 1038, increasing the number of Title IX suits brought by employees and students alleging that their educational institutions subjected them to sexual discrimination.

In reviewing sexual discrimination claims by teachers and other employees of educational institutions under Title IX, courts have regularly applied Title VII principles. In *Lipsett v. University of Puerto Rico,* 864 F.2d 881 (1st Cir.1988), for example, the plaintiff was a female medical student in the residency program and also was an employee of the University. *Id.* at 886. She alleged that University hospital supervisory personnel had subjected her to an atmosphere of sexual harassment at the hospital. *Id.* at 886-92. In determining that Title VII sexual harassment principles applied to this "mixed employment-training" context, the Second Circuit relied on Title IX's legislative history, "which strongly suggests that Congress meant for similar substantive standards to apply under Title IX as had been developed under Title VII." *Id.* at 897; *see also Preston v. Commonwealth of*

*Virginia ex rel. New River Community College,* 31 F.3d 203, 207 (4th Cir.1994); *Mabry v. State Bd. of Community Colleges,* 813 F.2d 311, 316 n. 6 (10th Cir.1987).

Courts also have relied upon Title VII when evaluating Title IX sexual harassment claims by students. In determining that Title IX prohibits a teacher's *quid pro quo* sexual harassment of a student, for example, one court observed that

> [it is] perfectly reasonable to maintain that academic achievement conditioned upon submission to sexual demands constitutes sex discrimination in education, just as questions of job retention or promotion tied to sexual demands from supervisors have become increasingly recognized as potential violations of Title VII's ban against sex discrimination in employment....

*Alexander v. Yale Univ.,* 459 F.Supp. 1, 4 (D.Conn.1977), *aff'd,* 631 F.2d 178 (2d Cir.1980). Similarly, in recognizing that Title IX prohibits the existence of a hostile environment due to a teacher's sexual harassment of a student, another court observed that "[t]hough the sexual harassment "doctrine' has generally developed in the context of Title VII, these [Title VII] guidelines seem equally applicable to Title IX." *Moire v. Temple Univ. Sch. of Medicine,* 613 F.Supp. 1360, 1366 n. 2 (E.D.Pa.1985), *aff'd,* 800 F.2d 1136 (3d Cir.1986).

Nonetheless, in *Franklin v. Gwinnett County Public Schools,* 911 F.2d 617 (11th Cir.1990), *rev'd,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), this court declined to apply a Title VII analysis to the question of whether compensatory damages were available in a suit brought by a student under Title IX. *Id.* at 622. On appeal, however, the Supreme Court reversed, and relied upon Title VII principles and authority in holding that Title IX

authorizes an award of compensatory damages. *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 74-75, 112 S.Ct. 1028, 1037, 117 L.Ed.2d 208 (1992). *Franklin* involved a high-school student's allegations that a teacher had sexually harassed and assaulted her and that school officials, who had actual knowledge of the misconduct, had failed to intervene. *Id.* at 63-64, 112 S.Ct. at 1031. In rejecting the argument that the specific language of Title IX did not give educational institutions sufficient notice of their liability for damages for such discrimination, the Supreme Court stated:

> Unquestionably, Title IX placed on the Gwinnett County Public Schools the duty not to discriminate on the basis of sex, and "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor "discriminate[s]' on the basis of sex." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64 [106 S.Ct. 2399, 2404, 91 L.Ed.2d 49] (1986). We believe the same rule should apply when a teacher sexually harasses and abuses a student. Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe.

*Franklin,* 503 U.S. at 75, 112 S.Ct. at 1037. Importantly, the Court relied on Title VII principles and cited *Meritor,* a Title VII case, to resolve the issue.

Subsequently, several courts have understood *Franklin* to authorize the application of Title VII standards to a student's Title IX sexual harassment claim against her school. In *Murray v. New York University College of Dentistry,* 57 F.3d 243 (2d Cir.1995), the Second Circuit looked to Title VII in addressing a student's Title IX claim that she was subjected to a sexually hostile educational environment created by a patient at the dental school. *Id.* at 248. The district court had dismissed the complaint after determining that the facts alleged were

insufficient to show that the college knew that plaintiff was subjected to a hostile environment created by the patient's persistent sexual advances. *Id.* at 247-48. In considering the appropriate standard for determining whether the college had notice of the hostile environment, the Second Circuit observed: "[t]he [*Franklin* ] Court's citation of *Meritor* ..., a Title VII case, in support of *Franklin* 's central holding indicates that, in a Title IX suit for gender discrimination based on sexual harassment of a student, an educational institution may be held liable under standards similar to those applied in cases under Title VII." *Murray,* 57 F.3d at 249. Upon application of Title VII standards, the Second Circuit determined that the facts alleged were insufficient to show that the college had notice of the hostile environment. *Id.* at 249-51.

Similarly, the District Court for the Northern District of California relied on *Franklin* in determining that a student may state a Title IX claim for hostile environment sexual harassment where the harassment is initiated by fellow students. In *Doe v. Petaluma School District,* 830 F.Supp. 1560 (N.D.Cal.1993), the plaintiff alleged that she was harassed when she was a seventh- and eighth-grade student in the defendant school district. The harassment allegedly began early in plaintiff's seventh-grade year, when two male students approached her and said "I hear you have a hot dog in your pants." *Id.* at 1564. Over the next year and a half, other students regularly made similarly offensive remarks to plaintiff and spread sexual rumors and innuendoes about her. *Id.* During this period, plaintiff and her parents spoke with her school

counselor on numerous occasions and asked him to stop the harassment. The counselor told them he would take care of everything, but he initially did nothing more than warn some of the offenders, stating that "boys will be boys." *Id.* at 1564-65. After the harassment and complaints had continued for more than a year, the counselor suspended two of the students. *Id.* at 1565. By that time, however, going to school had become emotionally difficult for plaintiff, and she ultimately transferred to a private school at her parents' expense in order to avoid the harassment. *Id.* at 1565-66.

Plaintiff filed suit under Title IX against the school district and several school officials for their failure to take action to stop the sexual harassment inflicted upon her by her classmates. *Id.* at 1563. Denying defendants' motion to dismiss for failure to state a claim, the court held that Title IX proscribes the same type of hostile environment sexual harassment prohibited by Title VII. *Id.* at 1571-75. In addition to relying on *Franklin* and Title IX's legislative history, the court looked to findings of the Department of Education's Office of Civil Rights ("OCR"). *Petaluma,* 830 F.Supp. at 1572 (citing *Patricia H. v. Berkeley Unified Sch. Dist.,* 830 F.Supp. 1288 (N.D.Cal.1993)). These findings demonstrated an OCR belief that "an educational institution's failure to take appropriate response to student-to-student sexual harassment of which it knew or had reason to know is a violation of Title IX." *Id.* at 1573 (citations omitted). The court concluded that to deny recovery to a sexually harassed student under the hostile environment theory "would

violate the Supreme Court's command to give Title IX a sweep as broad as its language."  *Id.* at 1575.

We likewise find it appropriate to apply Title VII principles to the question before us.  As discussed in the foregoing cases, such application is supported by *Franklin,* Title IX's legislative history and the Supreme Court's mandate that we read Title IX broadly, as well as by findings of the OCR.  In particular, the OCR has found that a student is subjected to sexual harassment when "unwelcome sexual advances, requests for sexual favors, or other sex-based verbal or physical conduct ... has the purpose or effect of unreasonably interfering with the individual's education creating an intimidating, hostile, or offensive environment." Letter of Findings by John E. Palomino, Regional Civil Rights Director, Region IV (July 24, 1992), Docket No. 09-92-6002, at 2.[4] The OCR also has found that "[w]hen individuals who are participating in a program or activity operated by an educational institution are subjected to sexual harassment, they are receiving treatment that is different from others."  *Id.*  Finally, the OCR has found that "[i]f the harassment is carried out by non-agent students, the institution may nevertheless be found in noncompliance with Title IX if it failed to respond adequately to actual or constructive notice of the harassment."  *Id.;  see also*

---

[4]OCR Letters of Findings are entitled to deference "as they express the opinion of an agency charged with implementing Title IX and its regulations."  *Petaluma,* 830 F.Supp. at 1573.  As the Supreme Court has stated, "this Court normally accords great deference to the interpretation, particularly when it is longstanding, of the agency charged with the statute's administration."  *North Haven,* 456 U.S. at 522 n. 12, 102 S.Ct. at 1918 n. 12.

Letter of Findings by Kenneth A. Mines, Regional Civil Rights Director, Region V (April 27, 1993), Docket No. 05-92-1174, at 2-4. Thus, in informally determining that Title IX prohibits peer sexual harassment in the schools, the OCR has relied on Title VII hostile environment principles.

Application of these principles to Title IX claims by students recognizes, as the Supreme Court acknowledged in *Franklin,* that a student should have the same protection in school that an employee has in the workplace. *See Franklin,* 503 U.S. at 74-75, 112 S.Ct. at 1037. Indeed, where there are distinctions between the school environment and the workplace, they "serve only to emphasize the need for zealous protection against sex discrimination in the schools." *Patricia H.,* 830 F.Supp. at 1292-93. The ability to control and influence behavior exists to an even greater extent in the classroom than in the workplace, as students look to their teachers for guidance as well as for protection. The damage caused by sexual harassment also is arguably greater in the classroom than in the workplace, because the harassment has a greater and longer lasting impact on its young victims, and institutionalizes sexual harassment as accepted behavior. Moreover, as economically difficult as it may be for adults to leave a hostile workplace, it is virtually impossible for children to leave their assigned school. Finally, "[a] nondiscriminatory environment is essential to maximum intellectual growth and is therefore an integral part of the educational benefits that a student receives. A sexually abusive environment inhibits, if not prevents, the harassed student from developing her full intellectual potential and receiving the

most from the academic program." *Id.* at 1293 (quotation omitted).

Thus, we conclude that as Title VII encompasses a claim for damages due to a sexually hostile working environment created by co-workers and tolerated by the employer, Title IX encompasses a claim for damages due to a sexually hostile educational environment created by a fellow student or students when the supervising authorities knowingly fail to act to eliminate the harassment.[5] *Cf. Franklin,* 503 U.S. at 74-75, 112 S.Ct. at 1037; *see Murray,* 57 F.3d at 249; *Petaluma,* 830 F.Supp. at 1575. *But see Seamons v. Snow,* 864 F.Supp. 1111, 1118 (D.Utah 1994).

In this case, by requiring that a school employee commit the harassing action in order for Davis to state a claim, the district court failed to recognize the nature of a claim for hostile environment sexual harassment. The court dismissed the complaint because, in its view, "any harm to LaShonda was not proximately

---

[5]The Board argues that Title VII caselaw is inapplicable to Title IX because Title IX was enacted under the spending clause. The Supreme Court, however, has relied on Title VII in analyzing claims under Title VI, which also was enacted under the spending clause. In *Guardians Association v. Civil Service Commission,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), for example, the Court found that Title VI's prohibition of discrimination was "subject to the construction given the antidiscrimination provision in Title VII in *Griggs v. Duke Power Co.* [401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) ]...." *Guardians,* 463 U.S. at 592, 103 S.Ct. at 3227. The Court also adopted Title VII's "business necessity" defense to analyze disparate impact claims in a Title VI case involving student placement. *See Board of Educ. v. Harris,* 444 U.S. 130, 151, 100 S.Ct. 363, 375, 62 L.Ed.2d 275 (1979). Likewise, we have utilized Title VII to analyze a disparate impact claim under Title VI, stating that "[t]he elements of a disparate impact claim may be gleaned by reference to cases decided under Title VII." *Georgia State Conf. of Branches of NAACP v. Georgia,* 775 F.2d 1403, 1417 (11th Cir.1985). Thus, the fact that Title VII is not a spending clause statute has not been a bar to importing its standards into Title VI, and therefore is no bar to importing its standards into Title IX.

caused *by* a federally-funded educational provider" and neither the Board nor an employee of the Board "had any role in the harassment." *Aurelia D.,* 862 F.Supp. at 367 (emphasis added). The court's rationale thus implicitly limited sexual harassment actions to *quid pro quo* harassment, which conditions benefits or maintenance of the status quo upon sexual favors. This was not Davis' claim. The evil Davis sought to redress through her hostile environment claim was not the direct act of a school official demanding sexual favors, but rather the officials' failure to take action to stop the offensive acts of those over whom the officials exercised control. Title VII recognizes this distinction and requires employers to take steps to assure that their employees' working environment is free from sexual harassment regardless of whether that harassment is caused by the sexual demands of a supervisor or by the sexually hostile environment created by supervisors or co-workers. *Henson v. Dundee,* 682 F.2d 897, 905 (11th Cir.1982).[6] Under this concept, when an employer knowingly fails to take action to remedy a hostile environment caused by one

---

[6]Other circuits also recognize employer liability under Title VII based on the employer's failure to take action to remedy a hostile environment created by co-workers. *See Smith v. Bath Iron Works,* 943 F.2d 164, 165-66 (1st Cir.1991); *Karibian v. Columbia Univ.,* 14 F.3d 773, 779 (2d Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994); *Levendos v. Stern Entertainment, Inc.,* 909 F.2d 747, 749 (3d Cir.1990); *DeAngelis v. El Paso Municipal Police Officers Assoc.,* 51 F.3d 591, 593 (5th Cir.1995); *Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 182 (6th Cir.), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992); *Carr v. Allison Gas Turbine Div. Gen. Motors,* 32 F.3d 1007, 1009 (7th Cir.1994); *Hall v. Gus Construction Co.,* 842 F.2d 1010, 1015-16 (8th Cir.1988); *Nichols v. Frank,* 42 F.3d 503, 508 (9th Cir.1994); *Baker v. Weyerhaeuser Co.,* 903 F.2d 1342, 1345-46 (10th Cir.1990).

co-worker's sexual harassment of another, the employer "discriminate[s] against ... an[ ] individual" in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

Likewise, when an educational institution knowingly fails to take action to remedy a hostile environment caused by a student's sexual harassment of another, the harassed student has "be[en] denied the benefits of, or be[en] subjected to discrimination under" that educational program in violation of Title IX, 20 U.S.C. § 1681(a). Just as a working woman should not be required to "run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living," *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405 (quotation omitted), a female student should not be required to run a gauntlet of sexual abuse in return for the privilege of being allowed to obtain an education.

Having determined that Title IX encompasses a claim for a hostile learning environment created by peer sexual harassment, we must consider the sufficiency of Davis' allegations. The elements a plaintiff must prove to succeed in this type of sexual harassment case are: (1) that she is a member of a protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment; and (5) that some basis for institutional liability has been established. *Cf. Meritor,* 477 U.S. at 66-73, 106 S.Ct. at 2405-08; *see also Harris v. Forklift Sys. Inc.,* --- U.S. ----, ---- - ----, 114 S.Ct. 367, 370-71, 126 L.Ed.2d 295 (1993); *Lipsett,* 864 F.2d

at 898-902.

Assumed as true, the facts alleged in the complaint, together with all reasonable inferences therefrom, satisfy these elements. There is no question that the allegations satisfy the first three requirements. First, as a female, LaShonda is a member of a protected group. Second, she was subject to unwelcome sexual harassment in the form of "verbal and physical conduct of a sexual nature." 29 C.F.R. § 1604.11(a). Third, the harassment LaShonda faced clearly was on the basis of her sex.

As to the fourth requirement, we recognize that a hostile environment in an educational setting is not created by simple childish behavior or by an offensive utterance, comment, or vulgarity. Rather, Title IX is violated "when the [educational environment] is permeated with "discriminatory intimidation, ridicule, and insult' that is "sufficiently severe or pervasive to alter the conditions of the victim's [environment] and create an abusive environment,' " *Harris,* --- U.S. at ----, 114 S.Ct. at 370 (quoting *Meritor,* 477 U.S. at 64-65, 106 S.Ct. at 2404) (internal citations omitted). In determining whether a plaintiff has established that an environment is hostile or abusive, a court must be particularly concerned with (1) the frequency of the abusive conduct; (2) the conduct's severity; (3) whether it is physically threatening or humiliating rather than merely offensive; and (4) whether it unreasonably interferes with the plaintiff's performance. *Id.* at ----, 114 S.Ct. at 371. The Court has explained that these factors must be viewed both objectively and subjectively. If the conduct is not so severe or pervasive that a

reasonable person would find it hostile or abusive, it is beyond Title IX's purview. Similarly, if the plaintiff does not subjectively perceive the environment to be abusive, then the conduct has not actually altered the conditions of her learning environment, and there is no Title IX violation. *Id.* at ---- - ----, 114 S.Ct. at 370-71.

Turning to the case before us in light of the relevant factors, we find the five months of alleged harassment sufficiently severe and pervasive to have altered the conditions of LaShonda's learning environment from both an objective and a subjective standpoint: (1) G.F. engaged in abusive conduct toward LaShonda on at least eight occasions; (2) the conduct was sufficiently severe to result in criminal charges against G.F.; (3) the conduct, such as the groping and requests for sex, was physically threatening and humiliating rather than merely offensive; and (4) the conduct unreasonably interfered with LaShonda's academic performance, resulting in the substantial deterioration of her grades and emotional health. The facts alleged go far beyond simple horseplay, childish vulgarities or adolescent flirting.

Finally, we consider the fifth and final element—whether any basis for the Board's liability has been shown. Under Title VII, whether the harassing conduct of a supervisor or co-worker should be imputed to the employer is determined in accordance with common-law principles of agency. *See Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408; *Murray,* 57 F.3d at 249. Under the agency theory of *respondeat superior,* this court holds employers liable for a hostile environment created by a co-worker where the plaintiff can

show that "the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Henson,* 682 F.2d at 905. An employee can demonstrate that the employer knew of the harassment "by showing that she complained to higher management of the harassment or by showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge." *Id.* (citation omitted).

In this case, Davis has alleged that she told the principal—a higher level manager—of the harassment on several occasions. She also alleged that at least three separate teachers, in addition to the principal, had actual and repetitive knowledge from LaShonda, her mother and other students. Finally, Davis alleged that despite this knowledge, the school officials failed to take prompt and remedial action to end the harassment.[7] These allegations regarding institutional liability, as well as the other allegations, are sufficient to establish a prima facie claim under Title IX for sexual discrimination due to the Board's failure to take action to remedy a sexually hostile environment.

## IV. CONCLUSION

In light of the foregoing, we affirm the district court's judgment with the exception of its dismissal of the Title IX claim against the Board. We reverse the district court's dismissal of that claim and remand for proceedings consistent herewith.

AFFIRMED in part; REVERSED in part; REMANDED.

---

[7] The complaint also alleged that during the time of the harassment, the Board had no policy prohibiting the sexual harassment of students in its schools, and had not provided any policies or training to its employees on how to respond to student-on-student sexual harassment.

BIRCH, Circuit Judge, concurring in part and dissenting in part:

Although I concur in the court's affirmance of the district court's dismissal of Davis's section 1983 claim, I disagree with the majority's holding that Davis's allegations state a valid claim against the Monroe County Board of Education under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 (1990 & Supp.1995) ("Title IX").

This case does not involve allegations that an employee of the school district sexually harassed LaShonda D., but rather that the school district negligently failed to prevent another student from harassing LaShonda. The majority is correct in noting that the Supreme Court has held that "Title IX is enforceable through an implied right of action." *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 65, 112 S.Ct. 1028, 1032, 117 L.Ed.2d 208 (1992) (citing *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). However, *Franklin* involved a high-school student's allegations that a teacher had sexually harassed and assaulted her, and that school officials, who had actual knowledge of the teacher's conduct, failed to intervene. 503 U.S. at 63-64, 112 S.Ct. at 1031-1032. The student-on-student sexual harassment alleged in this case is analytically quite distinct from that in *Franklin,* and the majority makes an unprecedented extension in holding that Title IX encompasses a claim of hostile environment sexual harassment based on the conduct of a student. There is no indication in the language of Title IX that such a cause of action was intended to be covered by its scope; rather, the statute states that "[n]o person in the United

States shall, on the basis of sex, ... be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In this case, the school board, which is clearly an educational "program or activity" under 20 U.S.C. § 1687, is not alleged to have committed any act of harassment against LaShonda, nor is any employee of the school board. Rather, the plaintiff seeks to hold the school board liable for negligently failing to prevent another student, not its employee, from sexually harassing LaShonda. In my opinion, this student-on-student sexual harassment case clearly falls outside the purview of Title IX.

Even if I were to accept the majority's conclusion that Title IX encompasses student-on-student sexual harassment, I would limit that holding to intentional conduct on the part of the school board. Here, what is alleged is that the school board was negligent in failing to intervene to prevent the recurring student-on-student harassment. The majority relies on *Franklin* in reaching its conclusion that Title IX covers such behavior, even though the *Franklin* case involved intentional behavior on the part of a teacher; absent an indication to the contrary, *Franklin* should be limited to its facts. But rather than do this, the majority not only broadly reads it to cover student-on-student sexual harassment, but also to cover negligent behavior on the part of the school board.

Lastly, I would limit the remedy available to a plaintiff in the case of unintentional violations of Title IX to injunctive relief. *Franklin* involved intentional discrimination by the school

board on the basis of sex, and thus involved an intentional violation of Title IX. The Supreme Court has held that in the case of intentional violations of Title IX, monetary damages are available to the victim of the sexual harassment. *Franklin,* 503 U.S. 73-75, 112 S.Ct. at 1037. What the Supreme Court did not decide in *Franklin,* however, was whether monetary damages are available in cases involving unintentional violations of Title IX. Most courts have interpreted Title IX along the same lines as similar statutes, such as Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d-2000d-4a (1994 & Supp.1995). Since the Supreme Court has expressly found that Title VI does not support a monetary damages remedy for Title VI violations not involving intentional discrimination, *Guardians Ass'n v. Civil Service Comm'n,* 463 U.S. 582, 602-03, 103 S.Ct. 3221, 3232-33, 77 L.Ed.2d 866 (1983), we similarly should find that monetary damages are limited to intentional violations of Title IX.[1] Therefore, even if I were to accept the majority's argument that Title IX applies to the conduct at issue in this case, I would limit the remedy available to the plaintiff to injunctive relief.

Accordingly, I CONCUR in part and DISSENT in part.

---

[1]At least one federal district court has reached this conclusion as well. *See Doe v. Petaluma City Sch. Dist.,* 830 F.Supp. 1560, 1571 (N.D.Cal.1993) (finding that "Title IX does prohibit hostile environment sexual harassment but that to obtain damages (as opposed to declaratory or injunctive relief), one must allege and prove intentional discrimination on the basis of sex by an employee of the educational institution"). The *Doe* court specifically held that "[t]o obtain damages, it is not enough that the institution knew or should have known of the hostile environment and failed to take appropriate action to end it." *Id.*